# EXHIBIT A



**Agreement for Consulting Services**

**General Terms and Conditions**

This Agreement (the "Agreement") is made this 9th day of March, 2017 by and between Bambach Enterprises LLC d/b/a Bambach Advisors ("Consultant") and Spectrum Alliance, LP and Trefoil Properties, LP (collectively, "Client" or "Company"). In consideration of the mutual covenants contained herein, the parties agree as follows:

1. <u>Scope of Work</u>. From time to time, Consultant shall perform services for or on behalf of Client as requested by one or more "Authorizations." Each Authorization shall specify the terms and conditions of the services to be performed by Consultant, and shall become effective only upon execution by Client and Consultant. In the event certain provisions of an Authorization conflict with the provisions of this Agreement, the parties hereto agree that the provisions of the Authorization shall be controlling.

2. <u>Compensation – Payment of Fees and Expenses</u>. Client shall pay Consultant fees for services as set forth in each Authorization, or if no fee amount is specified in the applicable Authorization, fees for services shall be charged at Consultant's customary hourly rates as set forth in the Work Authorization on a weekly basis, and the fees for services performed during a given week shall be paid on the Monday (or next succeeding business day if such Monday is a non-business day) of the following week. Time traveling will not be billable to Client. Client shall also pay Consultant for all reasonable costs and expenses incurred in connection with the services provided pursuant to this Agreement (for example: parking, tolls related to travel, mileage, copying, mail, etc.). Any costs and expenses to be incurred by Consultant which would exceed $2,000 in any month shall require the prior written approval of Client. Any fees requiring Court approval in a Chapter 11 proceeding will be paid as approved by the Court.

3. <u>Support Services</u>. Client shall provide Consultant with duplicating, secretarial and other support services at the location of the work, provided these services are necessary to complete the work.

4. <u>Rights to Work Product</u>. Client shall retain exclusive rights to ownership of all work product hereunder. Work product shall include reports issued pursuant to any Authorization, but shall exclude, among other things, all working papers by Consultant, memoranda, correspondence, notes, and calculations that Consultant may have prepared or used in the development of reports (provided that Client shall be entitled to retain copies of any of the foregoing provided to Client by Consultant). Consultant shall have the right to retain copies of reports issued to Client for Consultant's records. Consultant shall have the right to designate in writing certain work product as belonging to Consultant prior to the creation of such work product, and such designated work product shall be the exclusive property of Consultant if Client permits such work product created by Consultant.

5. <u>Access</u>. Client shall provide Consultant and its Personnel (as defined below) with access to all of Client's information, Personnel, books, records, and facilities reasonably necessary to complete the work under each Authorization. It may be necessary for Consultant to arrange for prospective investors/lenders to visit one or more of the facilities and meet with certain members of Client. It may also be necessary for Client to make certain of its Personnel available for conference calls to answer questions of prospective investors/lenders. Client will accommodate such requests for access, provided

they are made during normal business hours and upon no less than 48 hours prior written notice and, at Client's discretion with respect to visits to any of the facilities, accompanied by a representative of Client. Consultant will use its best efforts to (i) accommodate Client's working schedule so as not to cause undue disruption of Client's business, and (ii) attend any visits made by prospective investors/lenders.

6. **Personnel.** Each party agrees that neither it nor its affiliates will at any time during the period commencing on the date hereof and continuing until the first anniversary of the date that (i) all work provided under all Authorizations has been completed or (ii) this Agreement is otherwise terminated, whichever occurs last, directly or indirectly, solicit for employment any current or former director, officer, employee or representative of the other party ("Personnel") without the prior written consent of the other party.

7. **Independent Contractor.** Unless otherwise specifically set forth in an Authorization, neither Consultant nor any of its Personnel shall be deemed to be an agent, employee, officer or director of Client. Under no circumstances shall Consultant or any of its Personnel be, or be deemed to be, in control of the operations of Client, or to be an owner or operator or acting as a responsible person or controlling person with respect to Client.

8. **No Assumption of Liabilities.** Notwithstanding any provision herein to the contrary, Consultant does not assume, and shall not be deemed to have assumed, any liabilities, debts or obligations of Client of any kind or description.

9. **Limitation of Liability; Indemnification.**

    (a) Neither Consultant nor any of its Personnel shall have any liability to Client for any action taken or for refraining from the taking of any action, or for errors in judgment, except for any such claims, damages, liabilities and expenses that are found in a final judgment by a court of competent jurisdiction to have resulted primarily and directly from such person's willful misconduct or gross negligence of any sort.

    (b) Client hereby agrees to defend, protect, indemnify and hold harmless Consultant and its Personnel (each of the foregoing being an "Indemnity" and all of the foregoing being collectively the "Indemnities") from and against any and all claims, actions, damages, liabilities, judgments, costs and expenses (including all reasonable fees and disbursements of counsel, legal assistants and paralegals which may be incurred in the investigation or defense of any matter and, in the event of litigation, at all trial and appellate levels) imposed upon, incurred by or asserted against any Indemnitee, whether direct, indirect or consequential and whether based on any federal, state, local or foreign laws or regulations, under common law on an equitable cause, or on contract or otherwise by reasons of an Indemnities' services to Client (irrespective of whether an Indemnities' services have been rendered in connection with this engagement or otherwise), except for any such claims, damages, liabilities and expenses that are found in a final judgment by a court of competent jurisdiction to have resulted primarily and directly from such Indemnities' willful misconduct or gross negligence of any sort. In the event this indemnity is unenforceable as a matter of law as to a particular matter or consequence referred to herein, it shall be enforceable to the full extent permitted by law.

    (c) This indemnification applies, without limitation, to any act, omission, event or circumstance existing or occurring on or prior to the termination of the relationship between Consultant and Client. The indemnification provisions set forth above shall be in addition to any liability Client may otherwise have to Consultant. Without prejudice to the survival of any other obligation of Client to Consultant, the indemnities and obligations of Client contained herein shall survive the termination of the relationship between Consultant or any Indemnitee and Client until the second anniversary of the date that (i) all work provided under all Authorizations has been completed or (ii) this Agreement is otherwise terminated.

10. **Confidentiality.** Consultant shall maintain in strict confidence any information of a non-public nature relating to Client or its business that Consultant may gain or develop in the course of its engagement by Client, and shall not disclose any such information to any person during or after its engagement by Client except (i) information that is legally in Consultant's possession prior to the disclosure of such information hereunder and Consultant has received Client's prior written approval of its disclosure; (ii) information that, subsequent to its disclosure hereunder, becomes publicly available

through a party other than Consultant; (iii) information that becomes legally available to Consultant on a non-confidential basis from any third party; (iv) information that Consultant discloses as required by law or order of court (provided that, to the extent practical under the circumstances and unless the same relates to testimony by Consultant ordered or required in any deposition or legal proceeding, Consultant shall have first provided reasonable advance written notice of its intent to disclose such information to enable Client to oppose such request or demand for disclosure or seek a protective order with regard thereto); or (v) information that is disclosed with the prior written consent of Client. Notwithstanding the above, Consultant shall be permitted to disclose any information regarding Client to Consultant's Personnel who need to know such information to perform the services described in the Authorization provided Consultant shall be responsible for such Personnel's acts and compliance with this Agreement. Upon termination of this Agreement, Consultant shall return to Client all materials of a non-public nature from Client in the course of the engagement (other than Consultant's work product), and shall either deliver to Client or destroy any copies thereof that it may have made or received.

11.    Termination. This Agreement may be terminated by Client or Consultant provided the party cancelling this Agreement provides sixty (60) days' notice to the other party. Upon termination of this Agreement, Consultant shall be entitled to all unpaid expenses incurred pursuant to this Agreement through the date of termination and the remaining unpaid balance of any fee which is due and payable pursuant hereto through the date of termination. For the purposes of this Section 11, "Agreement" shall include any Authorization issued pursuant to this Agreement.

12.    Governing Law and Venue. This Agreement shall be interpreted, construed and enforced under the laws of the Commonwealth of Pennsylvania, without regard to conflicts of laws, regardless of the location of the performance of services hereunder. Any claim, action or proceeding involving the parties hereto shall be brought exclusively in the courts as stated above and the parties hereby irrevocably consent to the jurisdiction of these courts and the proper venue therein, each party hereby waiving any claim that any such forum would be inconvenient.

13.    Joint and Several Obligation. If Client consists of more than one person or entity, each shall be jointly and severally liable to perform the obligations of Client under this Agreement and any and all Authorizations. Any one or more parties constituting Client may be released from an obligation hereunder without affecting the liability of any party not so released.

14.    Miscellaneous. This Agreement expresses the entire agreement of the parties hereto and supersedes all prior promises, representations, understandings, arrangements and agreements among the parties with respect to the subject matter hereof. No change, alteration, or modification of this Agreement shall be effective unless made in writing and signed by both parties hereto. This Agreement shall inure to the benefit of, and shall be binding upon, the successors and assigns of the parties hereto; provided, however, that neither party shall assign any right herein or delegate any duties without the prior written consent of the other party. Failure of either party hereto to enforce any of the provisions of this Agreement or any rights with respect thereto shall in no way be considered to be a waiver of such provisions or rights or in any way affect the validity of this Agreement. In the event that any provision of this Agreement is held to be invalid, void or illegal by any court of competent jurisdiction, then the court making such determination may reduce the obligations so as to be enforceable according to applicable law and enforce such obligations as reduced. The remaining provisions of this Agreement shall be enforced according to their terms

15. **Nature of Engagement.** Consultant agrees for the duration of this agreement that it will act on Client's behalf with all communication or negotiation with secured lender(s) or any other entity as directed by Client.

IN WITNESS WHEREOF, the parties have executed this Agreement on the date first above written.

"Consultant"

Bambach Advisors

By: *John Bambach*

Name: John Bambach

Title: Managing Director

"Client"

Spectrum Alliance, LP
By: Spectrum Alliance Services GP, LLC
Trefoil Properties, LP
Trefoil Properties GP, LLC

By: [signature]

Name: James R. Wrigley

Title: President

Trefoil Properties, LP
Trefoil Properties GP, LLC

By: [signature]

Name: James R. Wrigley

Title: President

Correspondence sent to:

Bambach Advisors

ATTN: John Bambach

735 Island Way.

Clearwater Beach, FL 33767

Spectrum Alliance, LP/Trefoil Properties, LP

ATTN: James R. Wrigley, President

1120 Welsh Road, Suite 170

North Wales, PA 19454

---

Bambach Advisors
Chicago, IL   Philadelphia PA   Tampa, FL       Page 4
www.bambachadvisors.com

(O) 866-775-6106

# BAMBACH ADVISORS

## WORK/PROJECT AUTHORIZATION NO. 1
### DATED: _____

In accordance with that certain Agreement for Consulting Services by and between the undersigned Client and Bambach Advisors, Client hereby authorizes Bambach Advisors, ("Consultant") to perform the following services in accordance with the terms, conditions and covenants set forth in the Agreement and in this Authorization:

Client's Goals and Objectives.

Consultant agrees to assist Client to meet the following goals and objectives:

1. Analysis of the company's business projections, 13 week cash flow and business models;
2. Analysis of company's collateral and liquidity;
3. Understanding the liability of Owners and shareholders
4. Communications with Secured Lender(s), Unsecured parties, equity holders and others as requested by Client
5. Preparing Monthly Operating Reports for Court/UST
6. Help/guidance with structuring concepts when info from financing results are determined
7. Other activities as requested by Client

Personnel:

- Services will be performed by John Bambach and others under his directions unless otherwise approved by Client.

Compensation:

Hourly Fee Basis:
- Professional fees for this Authorization shall be charged at the rate of $150 per hour plus reasonable expenses, as stated in Section 2 of the Agreement. For John Bambach. In the event Bambach Enterprises provides accounting services, that individuals fee will be $75 per hour.
- Retainer: of $15,000 to be paid upon execution of this Agreement. If a Bankruptcy filing is to be made, the retainer shall be increased to $25,000.
- If the Client agrees to pay a weekly amount and once it is permitted by the Courts, Bambach Enterprises will reduce the Retainer to $10,000, applying the remainder to its weekly fee.
- Fees shall be paid as approved by Court, if Ch 11 is filed, otherwise fees are to be paid weekly
- Specifically excluded from this agreement is management of employees, sales and marketing which shall be managed by Board Member of Client.

"Consultant"

Bambach Advisors
By:: *John Bambach*
Name: John Bambach
Title: Managing Director

"Client"

Spectrum Alliance, LP
By: Spectrum Alliance Services GP, LLC
By: Trefoil Properties, LP
By: Trefoil Properties GP,LLC

Trefoil Properties, LP
By: Trefoil Properties GP,LLC

By: _____
Name: _____
Title: _____

---

Bambach Advisors                                                                                        (O) 866-775-6106
Chicago, IL   Philadelphia PA   Tampa, FL      Page 5
www.bambachadvisors.com

Addendum to Agreement of Consulting Services dated March 9, 2017, by and between Bambach Enterprises LLC d/b/a Bambach Advisors ("Consultant") and Spectrum Alliance, LP and Trefoil Properties, LP (collectively, "Client" or "Company"),

Whereby the Retainer is reduced to $15,000 in consideration for the Client/Company agreeing to file with the Court should it file for Chapter 11 Bankruptcy protection, a motion granting monthly fee applications to be paid to the Consultant upon Court approval and such payment shall be made within 5 days of Court approval.

Agreed to as of the 14th day of June, 2017 by:

"Consultant"

Bambach Advisors
By: *John Bambach*
Name: John Bambach
Title: Managing Director

"Client"

Spectrum Alliance, LP
By: Spectrum Alliance Services GP, LLC
By: Trefoil Properties, LP
By: Trefoil Properties GP, LLC

Trefoil Properties, LP
By: Trefoil Properties GP, LLC

BY: _____
Name: James R. Wrigley
Title: President