# EXHIBIT A

## REAL ESTATE SERVICES AGREEMENT

**REAL ESTATE SERVICES AGREEMENT** (this "**Agreement**") dated March 6, 2007, by and between **TREFOIL PROPERTIES, LP**, a Delaware limited partnership ("**Manager**") and **TREFOIL MANAGEMENT, LLC**, a Pennsylvania limited liability company ("**Sub-Manager**").

### BACKGROUND

Manager is the successor by merger to Spectrum Alliances Services Co, LLC, a Pennsylvania limited liability company ("**SASCO**"). SASCO was the sole member of Spectrum Alliance Services GP, LLC, a Pennsylvania Limited Liability Company ("**General Partner**"), the general partner of Spectrum Alliance, LP, a Pennsylvania limited partnership (the "**Master Partnership**"). The Master Partnership holds real estate (the "**Properties**") through separate single purpose entities, the general partner or managing member of which is indirectly owned by SASCO (together with any such general partners or managing members, the "**Holding Entities**"). Pursuant to the Amended and Restated Agreement of Limited Partnership (the "**Master Partnership Agreement**") of the Master Partnership, the responsibility for the management of the Partnership's business and affairs is placed on the General Partner which has delegated to Manager the responsibility to carry out such functions for the fees set forth on Schedule 2.9(b) of the Master Partnership Agreement.

Manager has determined to appoint Sub-Manager to manage the business and affairs of the Properties, the Holding Entities, the Master Partnership, SASCO, the General Partner and Manager, and Sub-Manager has agreed to accept such appointment and perform such services upon the terms and conditions set forth herein.

**NOW, THEREFORE**, in consideration of the mutual covenants herein contained, the parties hereto agree as follows:

1. <u>Appointment</u>. Manager hereby appoints Sub-Manager to manage the business and affairs of the Properties, the Holding Entities, the Master Partnership, SASCO, the General Partner and Manager. Sub-Manager accepts such appointment and represents that it is engaged in the business of managing the business and affairs of entities in the real estate business and it has the experience, personnel and facilities necessary and suitable to perform its duties hereunder.

2. <u>Term</u>. This Agreement shall be for a term (the "**Term**") of five (5) years and shall be automatically renewed thereafter for successive periods of one (1) year unless terminated pursuant to the provisions of <u>Section 3</u> below.

3. <u>Termination</u>.

   (a) This Agreement shall terminate automatically at any time in the event of: (i) the sale of all of the Properties, or (ii) the mutual written agreement of Manager and Submanager.

(b)  Manager may terminate this Agreement not earlier than the last day of the Term of this Agreement, as it may have been extended, by delivering to Sub-Manager not less than ninety (90) days prior written notice in accordance with the notice provisions herein contained if the Master Partnership has failed to achieve targeted goals established in the annual Business Plan (as defined in Section 10(f) below) for the immediately preceding year.

(c)  Manager may terminate this Agreement at any time for "cause" including, but not limited to: (i) any misuse of funds by Sub-Manager; and (ii) gross negligence or fraud on the part of Sub-Manager.

(d)  Manager or Sub-Manager, as the case may be, may terminate this Agreement upon ninety (90) days written notice to the other party in the event the other party defaults in its performance hereunder in a material manner and such default shall continue for (i) ten (10) days after written notice in the case of monetary default, or (ii) thirty (30) days after written notice in the event of any non-monetary default; provided, however, if such non-monetary default cannot be cured within thirty (30) days, Sub-Manager or Manager, as the case may be, shall not be in default if such party has begun such cure and is proceeding with reasonable promptness and diligence to cure such default; and provided, further, that such right of termination shall be in addition to and not in limitation of the rights and remedies to be available to either party upon the occurrence of a default by the other party under this Agreement which is not cured within the applicable time period provided herein, with the non-defaulting party in such event having, in addition to the right to terminate this Agreement, all rights and remedies available at law or in equity, including, without limitation, the right to monetary damages, injunctive relief and specific performance.

4.  Specific Duties of Sub-Manager.  Without limiting the duties and obligations under any other provision of the Agreement, Sub-Manager agrees to perform the following services:

(a)  Asset Management Services.  Sub-Manager shall provide all asset management services to the Properties, the Holding Entities, the Master Partnership, SASCO, the General Partner and Manager, which asset management services shall include, without limitation, those services described on Exhibit "A" attached hereto and made a part hereof.

(b)  Property Management Services.  Sub-Manager shall provide all property management services to the Properties, which property management services shall include, without limitation, those services described on Exhibit "B" attached hereto and made a part hereof.

(c)  Leasing Services.  Sub-Manager shall provide or arrange to provide through third parties all leasing services to the Properties, which leasing services shall include, without limitation, those services described on Exhibit "C" attached hereto and made a part hereof.

(d)  Pre-Development Services.  Sub-Manager shall provide or arrange to provide through third parties all pre-development services to the Master Partnership with respect to proposed development projects ("Development Projects"), which pre-development services

shall include, without limitation, those services described on Exhibit "D" attached hereto and made a part hereof.

(e) Development Services. Sub-Manager shall provide or arrange to provide through third parties all development services to the Master Partnership with respect to Development Projects, which development services shall include, without limitation, those services described on Exhibit "E" attached hereto and made a part hereof.

(f) Legal Services. Sub-Manager shall provide or arrange to provide through third parties all legal services to the Properties, the Holding Entities, the Master Partnership, SASCO, the General Partner and Manager, which legal services shall include, without limitation, those services described on Exhibit "F" attached hereto and made a part hereof.

5. Monies Collected. All receipts and revenues from each Property shall be deemed to be trust funds. Sub-Manager shall maintain separate bank accounts for each Property (each, a "Property Account"), and such other bank accounts for the Master Partnership, SASCO and Manager as are necessary or desirable (such bank accounts, together with the Property Accounts, are referred to herein as the "Accounts"). All funds in the Accounts shall be the property of the entity for which they are held, and such funds shall be disbursed only as hereafter set forth. Sub-Manager shall pay expenses and disbursements with respect to the Properties or the Holding Entities out of the Accounts. In the event the disbursements shall be in excess of receipts, Manager hereby agrees to advance such excess promptly upon demand of Sub-Manager or cause such sums to be advanced. Sub-Manager is not expected to use its own funds in payment of any expenses pertaining to any Property.

6. Compliance with Laws. Sub-Manager shall take such actions as may be necessary to cause the Properties, Holding Entities, Master Partnership, SASCO, General Partner and Manager to comply with any and all laws, orders or requirements by a federal, state, county or municipal authority having jurisdiction thereover.

7. Breach of Lease by a Tenant. Sub-Manager may in the normal course of business:

(a) sign and serve notices to tenants in breach of their leases or rental agreements as Sub-Manager may deem necessary and proper;

(b) bring suit for and recover any delinquent rents or damages and possession of the premises in the name of a Holding Entity as a manager with a beneficial interest;

(c) attach, garnish and levy upon the property of any delinquent tenant; and

(d) settle, compromise, and adjust said actions; Sub-Manager does not guarantee or represent that any such suits or collection efforts will be successful.

8. Personnel. Sub-Manager may, at the cost and expense of the Holding Entities or Manager, as the case may be, employ, pay, direct and discharge all employees or independent contractors deemed by Sub-Manager necessary for the operation and maintenance of any Property, Holding Entity, Master Partnership, SASCO, General Partner or Manager, including,

where necessary, independent directors of Holding Entities. All such persons shall be hired as independent contractors or as employees of Sub-Manager. Any such employees shall conclusively be and deemed to be for all purposes the employees or the independent contractors of Sub-Manager and not of Manager. Compensation of employees who work at a Property and at other Properties, or work for multiple Holding Entities, shall be appropriately prorated.

9. Taxes and Insurance.

(a) Sub-Manager shall obtain all necessary fire, liability, earthquake, or any other insurance with respect to the Properties, Holding Entities, Master Partnership, SASCO, General Partner and Manager in such amounts as Sub-Manager deems appropriate. All liability policies shall name Sub-Manager as an additional insured.

(b) Sub-Manager shall promptly investigate and make a full timely report to the insurance company as to all accidents and/or claims for damage by any cause.

(c) Sub-Manager shall duly and punctually pay at the expense and on behalf of Manager all real estate taxes, assessments and all insurance premiums referred to in clause (a) above prior to the time that any policy would lapse due to nonpayment of premium or interest would accrue upon real estate taxes or assessments, and Sub-Manager shall keep Manager informed of any changes in the amount of real estate tax assessments, and shall recommend the advisability of contesting the validity or the amount.

10. Accounting, Records, Reports.

(a) Sub-Manager shall maintain a comprehensive system of records, books and accounts, such records, books and accounts to fully and accurately reflect each and every transaction of a Property, a Development Project, a Holding Entity, the Master Partnership, SASCO, the General Partner and Manager, and all such books, records and accounts shall be surrendered to Manager upon termination of this Agreement. All records, books and accounts shall be separately maintained for each Property, Development Project or entity. The Independent Members (as defined in Section 11(b) below) of Manager, if any, and others designated by Manager shall have at all times access to such records, accounts and books and to all vouchers, files and all other material pertaining to a Property, a Development Project or entity, all of which Sub-Manager agrees to keep safe, available and separate from any unrelated records.

(b) No later than January 31 of each year or such other date specified in a written notice from Manager to Sub-Manager, Sub-Manager shall deliver to Manager a budget, broken down by Property and/or Holding Entity, setting forth in detail, as requested by Manager, the estimated receipts and the estimated expenses, on an accrual basis, during such year, including without limitation, both a capital budget and an operating budget with respect to each Property and Development Project.

(c) No later than April 1 of each year, Sub-Manager shall provide to Manager an annual statement of the operations for each Property and/or Holding Entity for the prior year, showing in detail total income and expenses, together with profit and loss statements, balance sheets and cash flow statements. Sub-Manager will cooperate with and give reasonable

assistance to any independent public accountant retained by Manager to examine such statements or other records.

(d) Sub-Manager shall be responsible to prepare or arrange to prepare through third parties any and all tax returns required for the Holding Entities, the Master Partnership, SASCO, General Partner and Manager.

(e) Sub-Manager shall meet with the Independent Members, if any, of Manager or such partners of Manager as may be designated by Manager semi-annually, and more frequently upon request, to discuss the operations and prospects of the Properties and Development Projects. Sub-Manager shall provide such information and reports to the Independent Members or such partners, as applicable, as they may reasonably request.

(f) Commencing on January 31, 2008, and on or before January 31 of each year thereafter, Sub-Manager shall prepare and submit to the Independent Members, if any, of Manager or such partners of Manager as may be designated by Manager a business plan ("**Business Plan**") with respect to such year, which Business Plan shall establish goals with respect to acquisitions, dispositions, Development Projects, capital generation and refinancings. The Business Plan shall also establish targets, return on investment and other benchmarks of performance. The ability of Sub-Manager to achieve such goals shall be taken into account in the determination of the size of bonuses of the executive officers of Sub-Manger and, to the extent applicable, for the renewal of the Term of this Agreement.

11. <u>Reimbursement for Services; Budget for Sub-Manager</u>. (a) Manager shall reimburse Sub-Manager for all costs and expenses of performing its services under this Agreement, including without limitation, payment of salaries, benefits and reasonable bonuses for Sub-Manager's employees, the payment of Manager's reasonable overhead expenses and the reimbursement of out-of-pocket expenses reasonably incurred by Sub-Manager in performing its duties hereunder, including dues for memberships in professional organizations, reasonable business entertainment, rent for Sub-Manager's office(s), insurance premiums, and typical expenses incurred by real estate management and operating companies.

(b) No later than January 31 of each year, Sub-Manager shall deliver to the limited partners of Manager a budget for the operation of Sub-Manager for such year, including in reasonable detail the projected salaries, benefits and bonuses of executive officers and other employees of Sub-Manager, rental and other overhead expenses of Sub-Manager and anticipated reimbursable expenses, with each budget indicating, as and where appropriate, a range of expenses, not to exceed plus or minus ten percent (10%) in the aggregate for the entire budget, to reflect variations in actual expenses based on the timing of transactions or changes in the level or number of transactions. Sub-Manager shall provide such detail and backup as Manager shall reasonably request. Sub-Manager shall concurrently deliver each such budget and supporting information to an independent advisory committee (the "Advisory Committee") appointed by Manager. The Advisory Committee shall be composed of three individuals, who may be limited partners of Manager but need not be, with the initial Advisory Committee composed of Richard A. Watson, Jr., David J. Friesen and Dr. Peter D. Linneman, each of whom shall serve until replaced by Manager. The Advisory Committee will act by majority vote. If the Advisory Committee fails to object to such budget within thirty (30) days following its submission thereof,

such budget shall be deemed approved. To the extent circumstances change during the course of a year, for example, more Properties are acquired or developed during the course of the year than were projected, Sub-Manager may submit a revised budget to the Advisory Committee for approval and such revised budget shall be deemed approved unless objected to within fifteen (15) days following its submission. If any budget or revised budget is not approved within the time periods specified herein, Sub-Manager is authorized to proceed under the prior budget until such approval is obtained, provided that the compensation portion of each such budget (including salaries, benefits and bonuses) shall be automatically approved if the total budget for compensation is no greater than the sum of (i) 110% of the total compensation paid to all officers, employees and consultants of Sub-Manager who have been employees or consultants of Sub-Manager for one (1) year or more plus (ii) the total compensation to be paid to all new officers, employees and consultants of Sub-Manager to be paid at market rates and terms. If Manager does not designate an Advisory Committee to act in the capacity provided herein, Sub-Manager shall submit all information and reports required pursuant to this Agreement to each partner of Manager, and in all cases where Manager's consent, approval or agreement is required hereunder, such consent, approval or agreement shall be deemed given unless partners holding not less than fifty-one percent (51%) of the limited partnership interests in Manager give written notice of their objection to the proposed action to Sub-Manager within the applicable time period specified herein.

(c)     Sub-Manager acknowledges and agrees that it is to perform its services hereunder at cost and without profit, it being intended that any profit above cost from the fees set forth in Schedule 2.9(b) of the Master Partnership Agreement is to be retained by Manager. However, Manager acknowledges and agrees that the salaries, benefits and bonuses for the executive officers and other employees must be sufficient to attract and retain sufficient talent for the proper performance of Sub-Manager's services hereunder; and such salaries, benefits and bonuses shall be consistent with the past practices of Sub-Manager. At or about the end of each year, Sub-Manager will recommend to the Advisory Committee bonus amounts for executive officers and other employees as Sub-Manager deems appropriate, taking into account the performance of such executive officer or employee, and the over all performance by the Sub-Manager of its duties hereunder. The bonuses recommended by Sub-Manager, in the aggregate, may be greater or less than as set forth in the budget. It is anticipated that bonuses will initially be budgeted as a percentage, or a range of percentages, of salary, with different percentages for each compensation level. All such bonuses shall be subject to approval by the Advisory Committee, which approval shall not be unreasonably withheld, conditioned or delayed.

12.     Arbitration.  It is agreed that any dispute under the terms of this Agreement shall be submitted to arbitration by before the American Arbitration Association in Philadelphia, Pennsylvania under the American Arbitration Association Rules relating to commercial transactions and any award made shall be final and binding on all parties. The prevailing party shall recover from the losing party reasonable costs and attorney's fees.

13.     Assignment.  This Agreement and any interest herein shall not be assigned, conveyed, transferred or delegated by Sub-Manager without the prior written consent of Manager. This Agreement and any interest herein shall not be assigned, conveyed or transferred by Manager (except to a lender) without the prior written consent of Sub-Manager; provided, however, that nothing contained within this Section shall be construed as requiring the consent of

Sub-Manager to the assignment, conveyance, or transfer of any or all of Manager's interest in the Property to any other person or entity.

14. **Notices.** All notices and other communications hereunder shall be effective if and only if in writing and delivered personally, sent by Federal Express or similar courier, or mailed by Registered or Certified Mail (Return Receipt Requested), charges or postage prepaid, to the address at the addressee's address last supplied by the addressee to the sender by effective notice hereunder (or, prior to any such notice, at the address for the addressee set forth below). Unless otherwise provided, notice is effective when received.

Manager:     James R. Wrigley
             Trefoil Properties GP, LLC
             1690 Sumneytown Pike, Suite 190
             Lansdale, PA 19446

Sub-Manager:  Robert T. Wrigley, Jr.
              Trefoil Management, LLC
              Towamencin Corporate Center
              1690 Sumneytown Pike, Suite 190
              Lansdale, Pennsylvania 19446

With a copy to:  John P. Lloyd, Esquire
                 General Counsel
                 Trefoil Management, LLC
                 Towamencin Corporate Center
                 1690 Sumneytown Pike, Suite 190
                 Lansdale, Pennsylvania 19446

15. **Liability of Sub-Manager.** By acceptance of this Agreement, Manager agrees that, for the payment of any claim or performance of any obligation hereunder, recourse shall be had only to the fees and expenses payable to Sub-Manger hereunder, and no shareholder, member, officer or employee of Sub-Manager shall be personally liable therefor.

16. **Headings.** The headings of this Agreement are inserted only for the purpose of convenient reference and do not define, limit or prescribe the scope or intent of this Agreement or any part thereof.

17. **Applicable Law.** This Agreement shall be construed in accordance with the laws of the Commonwealth of Pennsylvania. Subject to the restrictions on assignment hereinbefore set forth, this Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their respective successors and assigns.

18. **Entire Agreement.** The provisions of this Agreement constitute the entire agreement of the parties hereto. Any agreement hereafter made shall be ineffective to change,

modify, discharge or effect an abandonment of this Agreement in whole or in part unless such an agreement is in writing and is signed by the party against whom enforcement of the change, modification or abandonment is sought.

19. <u>Rights and Remedies Cumulative</u>. The rights and remedies provided by this Agreement are cumulative and the use of any one right or remedy by any party shall not preclude or waive the right to use any and all other remedies. Such rights and remedies are given in addition to any other rights the parties may have by law, statute, ordinance or otherwise.

20. <u>Non-Competition</u>. It is the intention of the parties hereto that Sub-Manager and its key executives (as defined below) will devote all of their efforts in the field of commercial real estate to the performance of the duties of Sub-Manager under this Agreement. In order to assure Manager that the key executives of Sub-Manager (defined as the President and all Executive, Senior and other Vice Presidents of Sub-Manager) will perform in such fashion for the benefit of Manager, Sub-Manager shall obtain from each of its key executives a non-competition agreement in the form of Exhibit "G" attached hereto and made a part hereof (collectively, the "Non-Competition Agreements") and shall promptly deliver copies thereof to Manager, which Non-Competition Agreements shall terminate upon the earlier of (a) the expiration or sooner termination of this Agreement and (b) the date on which such key executive ceases for any reason to be an employee of Sub-Manager.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date and year first above written.

THIS CONTRACT CONTAINS A BINDING ARBITRATION PROVISION

**MANAGER**

TREFOIL PROPERTIES, LP
By: TREFOIL PROPERTIES GP, LLC, its
General Partner

By: _____
Name: James R. Wrigley
Title: Sole Member and President

**SUB-MANAGER**

TREFOIL MANAGEMENT, LLC

By: _____
Name: Robert T. Wrigley
Title: Manager

## Exhibit "A"

## Asset Management Services

### Entity Level

1. Form and maintain existence of all entities
2. Retain and oversee outside accountants, attorneys and consultants
3. Maintain all bank accounts
4. Maintain books and records
5. Arrange for preparation of tax returns

### Acquisitions and Dispositions

1. Recommend acquisitions and dispositions and the timing thereof
2. Perform due diligence
3. Negotiate agreements
4. Arrange financings, refinancing and pay offs
5. Arrange equity investments, including the sale of tenant in common interests

### Properties

1. Determine strategies for Properties
2. Arrange financing and refinancings
3. Arrange additional equity when required
4. Determine capital expenditure levels; analyze and arrange for necessary rehabilitation/repositioning of any Property

### Spectrum Alliance, LP

1. Strategic planning for portfolio
2. Arrange redemptions, including providing for a redemption loan facility and working capital reserves
3. Arrange for portfolio valuation analysis

<u>Exhibit "B"</u>

<u>Property Management Services</u>

1. Manage, operate, maintain and service each Property

2. Bill and collect all rents and additional rents

3. Cause each Property to comply with all laws and insurance policies

4. Secure full compliance by tenants with the terms and conditions of their respective leases

5. Prepare inventories of all personal property

6. Prepare a plan for the maintenance and operation of each Property, including capital improvements and replacements

7. Maintain the receipts or revenues from each Property in an interest-bearing, federally-insured bank account

8. Pay regularly and punctually all expenses of each Property

9. Execute contracts in name of the Holding Entity as the agent thereof for the provision of services

10. Cause each Holding Entity to comply with all of the terms and provisions of all loans in effect with respect to each Property

11. Select, retain and supervise all contractors and employees of Sub-Manager to perform all property management services

12. Prepare annual budgets for each Property

## Exhibit "C"

## Leasing Services

1. Subject to market conditions, cause the Properties to be leased according to leasing guidelines ("Leasing Guidelines") established with respect to each Property as a part of the annual budget

2. List from time to time through its own organization or through other real estate brokers, such space in the Properties as is vacant or available for leasing

3. Negotiate with prospective tenants for new leases in the Properties, and negotiate with tenants for the expansion, extension, renewal, modification, amendment or termination of existing leases, pursuant to the then current Leasing Guidelines

4. Execute leases and amendments in Manager's name as Manager's agent

5. Prepare a lease abstract for each lease and update, as necessary, lease abstracts for executed leases

6. Procure credit references for prospective tenants, as appropriate, and investigate such references

7. Prepare changes to the Leasing Guidelines from time to time

8. Develop a tenant retention program consistent with those provided by entities leasing similar properties

9. Prepare a promotional and advertising program for each Property as appropriate

10. Select and retain all third-party leasing agents and supervise the leasing of each Property

## Exhibit "D"

### Pre-Development Services

1. Obtain through Sub-Manager's employees or third-party consultants and professionals all land use, subdivision, zoning and other permits and approvals necessary for the development and construction of each Development Project

2. Select and negotiate a contract with the project architect, contractor, construction manager, and other design professionals for the design, development and construction of each Development Project

3. Prepare or supervise the preparation of budgets, plans, construction schedules and other design parameters for the development of each Development Project, including estimates of costs of construction and evaluation of the relative feasibility and cost of alternative construction methods and materials

4. Review of the design and specifications for each Development Project and, in collaboration with the design professionals, establish procedures for review of working drawings, samples and construction data

5. Coordinate with the design professionals in the preparation of and modifications to the project budget and the plans and specifications for each Development Project

6. Select materials and equipment to be used in the construction process

7. Prepare estimates of both quantity and quality of labor necessary and available for the construction process

8. Administer the contracting process, including the development of pre-qualification criteria for bidders and creation of a summary of each bid

9. Select construction managers, contractors and subcontractors on the basis of the relative qualifications, resources for good and workmanlike construction and timely completion of the Development Project

10. Solicit and review bids related to each Development Project

11. Monitor the pre-development and development services performed for each Development Project

## Exhibit "E"

## Development Services

1. Supervise/review the construction manager, contractor and subcontractors in the construction process, including the development and monitoring of the construction schedule and scheduling of the activities of the various subcontractors; establish site organization and lines of authority; monitor the various subcontractors; assure compliance with the established construction schedule and the contract documents; and resolve any disputes involving any subcontractors

2. Review and process applications by contractor/construction manager for progress and final payments; make recommendations to the project architect regarding certification of such applications for payment

3. Monitor the actual and projected costs of construction; maintain accounting and other records related to the construction process; perform budgeting services; and deliver progress and financial reports

4. Confirm that insurance is maintained by contractor and subcontractors under the terms of their contracts

5. Consult with the project architect regarding the status of the work of contractor and each subcontractor; monitor compliance with the construction schedule, budget and contract documents

6. Recommend necessary or desirable changes in the work to the project architect and contractor; review requests for work, field or change orders; negotiate proposals by contractor and each subcontractor

7. Upon issuance of a certificate of substantial completion by the project architect, monitor contractor's obligation to achieve final completion; confirm all guarantees and warranties by design professionals, construction managers, contractors, subcontractors related to work performed on the Development Project and possible defects relating thereto; oversee the warranty process; supervise procurement of all necessary releases and waivers in connection with the construction of the Development Project

8. Monitor construction managers, contractors and/or subcontractors and suppliers in the initial start up and testing of utilities, operating systems and equipment

## Exhibit "F"

### Legal Services

Sub-Manager shall, through licensed attorneys employed by Sub-Manager or through outside attorneys, provide such legal services as are necessary for the Properties, Development Projects, Holding Entities, Master Partnership, SASCO and the General Partner, including, without limitation:

1. Form and maintain the existence of all entities

2. Obtain necessary approvals and permits

3. Negotiate and document agreements for the acquisition and disposition of Properties

4. Negotiate and document loans

5. Negotiate and document equity investments

6. Negotiate and document leases, lease amendments and other agreements

7. Supervise and monitor claims and litigation

8. Provide general legal advice and counseling with respect to the Properties, Development Projects, Holding Entities, Master Partnership, SASCO, the General Partner and Manager.

9. Supervise outside attorneys in the performance of services for the Properties, Development Projects, Holding Entities, Master Partnership, SASCO, the General Partner and Manager.

Exhibit "G"

## NON-COMPETITION AGREEMENT

THIS AGREEMENT is made and entered into as of the ____ day of _____, 2007, by and between _____ (the "Employee") and TREFOIL MANAGEMENT, LLC, a Pennsylvania limited liability company (the "Employer").

### BACKGROUND

Employer has entered into that certain Real Estate Management Agreement by and between Employer and Trefoil Properties, LP, a Delaware limited partnership ("TPLP"), pursuant to which TPLP has appointed Employer to manage the business and affairs of certain entities as further specified therein (the "Management Contract"). Employer desires to hire Employee to perform services on its behalf pursuant to the Management Contract. It is integral to Employer's decision to employ Employee that Employee enter into this Non-Competition Agreement with Employer to provide for the protection of certain confidential information, including business plans and projections, of TPLP that will be disclosed and made available to Employer by TPLP under the Management Contract, and to assure TPLP that Employee will be devoting all of such Employee's efforts in the area of commercial real estate to the performance of Employer's obligations under the Management Contract.

NOW THEREFORE, in consideration of the premises and the mutual representations, warranties, covenants and agreements contained in this Agreement, the parties hereto, intending to be legally bound, agree as follows:

9. <u>Noncompetition; Confidential Information.</u>

(a) For so long as Employee is employed by Employer, unless expressly consented to in writing by Employer, Employee shall not, directly or indirectly engage, anywhere in the Territory (as defined in Section 1(c) below), in the acquisition, development, management, leasing, financing, sale or property management of commercial office buildings or retail stores or shopping centers having a cost or value in excess of $3,000,000.00; provided, however, that nothing herein shall prohibit Employee from owning, as a passive investor, any publicly traded stock of any entity so engaged or, if not publicly traded, not more than 10% of the ownership interests in any entity so engaged. Nothing contained herein shall limit or impair in any way Employee's ability to engage in any non-competitive activities within the Territory, such as residential and industrial real estate projects, or any activities outside the Territory.

(b) From the date hereof and for the period ending twelve (12) months after Employee's employment by Employer has terminated, Employee shall not, directly or indirectly, use in furtherance of any of Employee's business affairs or disclose to any third party

any business plan or projection, trade secret, financial data, tenants lists or plan or any other proprietary or confidential information relating to Employer or TPLP or any of its affiliates, properties, or services, so long as the same is not publicly known (other than by the act of Employee).

(c) For the purposes of this Agreement, "Territory" means the States of Pennsylvania, New Jersey, Maryland and Delaware and any other state or other jurisdiction within the United States of America in which TPLP owns, directly or indirectly, real estate or an interest in real estate, and the country of Germany.

(d) If any party hereto learns of any breach or potential breach of this Agreement such party shall immediately notify the other party hereto of such event, specifying the basis therefor in reasonable detail. Employer may, in its sole discretion, afford Employee an opportunity to remedy or otherwise cure such breach or potential breach before seeking legal redress, provided that Employee is actively seeking to cure or remedy such breach or potential breach; but such opportunity to remedy shall be without prejudice to the right of Employer to seek and obtain injunctive or other relief.

10. Notices. All notices hereunder shall be in writing and shall be sufficiently given if hand delivered, sent by documented overnight delivery service or registered or certified mail, postage prepaid, return receipt requested or by telegram, telex, fax or telecopy (confirmed by U.S. mail), receipt acknowledged, addressed as set forth below or to such other person and/or at such other address as may be furnished in writing by any party hereto to the other. Any such notice shall be deemed to have been given as of the date received, in the case of personal delivery, or on the date shown on the receipt or confirmation therefor, in all other cases.

To Employer:

Trefoil Management, LLC
1690 Sumneytown Pike, Suite 190
Lansdale, PA 19446


To Employee:




11. Assignment and Benefit. Employer may assign this Agreement in whole or in part to any subsidiary or affiliate of Employer or to any person, firm or corporation which becomes a successor in interest (by purchase of its assets or stock, or by merger or otherwise) to Employer. Subject to the foregoing, this Agreement and the rights and obligations set forth herein shall inure to the benefit of, and be binding upon, the parties hereto and each of their respective successors and assigns.

12. <u>Injunctive Relief; Consent to Jurisdiction and Service of Process</u>. Employee acknowledges that damages alone shall not be an adequate remedy for any breach by Employee of Employee's covenants contained in this Agreement and accordingly expressly agrees that, in addition to any other remedies which Employer may have, Employer shall be entitled to injunctive relief in any court of competent jurisdiction for any breach or threatened breach of any such covenants by Employee. Any legal action, suit or proceeding arising out of or relating to this Agreement may be instituted in any federal court in the Eastern District of Pennsylvania or in any state court in Montgomery County in the Commonwealth of Pennsylvania, and each party waives any objection which such party may now or hereafter have to the laying of the venue of any such action, suit or proceeding, and irrevocably submits to the jurisdiction of any such court. Any and all service of process and any other notice in any such action, suit or proceeding shall be effective against any party if given as provided in Section 2 herein. Nothing herein contained shall be deemed to affect the right of any party to serve process in any other manner permitted by law or to commence legal proceedings or otherwise proceed against any other party in any jurisdiction other than Pennsylvania. Nothing contained herein shall prevent or delay Employer from seeking, in any court of competent jurisdiction, specific performance or other equitable remedies in the event of any breach or intended breach by Employee of any of Employee's obligations hereunder.

13. <u>Entire Agreement and Modification; Waivers</u>. (a) This Agreement constitutes the entire agreement between the parties hereto with respect to the matters contemplated herein and supersedes all prior agreements and understandings with respect thereto. Any amendment, modification, or waiver of this Agreement shall not be effective unless in writing. Unless expressly provided, the waiver by a party of any breach of any provision of this Agreement shall not constitute or operate as a waiver of any other breach of such provision or of any other provision hereof, nor shall any failure to enforce any provision hereof operate as a waiver of such provision or of any other provision hereof.

(b) Employee may at any time request in writing from Employer a determination, to be made in Employer's reasonable commercial determination, whether an activity which Employee desires to pursue would be in violation of any prohibition contained in this Agreement and, if such activity is deemed to be in violation of this Agreement, whether Employer would waive the enforcement of Employer's rights with respect to such activity. Employer agrees to respond to Employee in writing within fifteen (15) days following receipt of such request. The parties agree that any determination of non-competition or waiver granted by Employer shall not constitute an amendment to this Agreement or limit Employer's rights hereunder with respect to any subsequent request.

14. <u>Governing Law</u>. This Agreement is made pursuant to, and shall be construed and enforced in accordance with, the internal laws of the Commonwealth of Pennsylvania (and United States federal law, to the extent applicable), without giving effect to otherwise applicable principles of conflicts of law.

15. <u>Severability</u>. Employee acknowledges and agrees that the covenants contained in this Agreement are fair and reasonable in light of the consideration paid hereunder and in order to protect Employer's investment in the Company, and the invalidity or

unenforceability of any particular provision, or part of any provision, of this Agreement shall not affect the other provisions or parts hereof. If any provision hereof is determined to be invalid or unenforceable by a court of competent jurisdiction, Employee shall negotiate in good faith to provide Employer with protection as nearly equivalent to that found to be invalid or unenforceable and if any such provision shall be so determined to be invalid or unenforceable by reason of the duration or geographical scope of the covenants contained therein, such duration or geographical scope, or both, shall be considered to be reduced to a duration or geographical scope to the extent necessary to cure such invalidity.

16. <u>Counterparts</u>. This Agreement may be executed in two or more counterparts, each of which shall be deemed to be an original and all of which, when taken together, shall be deemed to constitute but one and the same agreement.

17. <u>Further Assurances</u>. Each of the parties hereto shall execute such further instruments and take such other actions as the other party shall reasonably request in order to effectuate the purposes of this Agreement.

IN WITNESS WHEREOF, each of the parties hereto has duly executed and delivered this Agreement as of the date first above written.

TREFOIL MANAGEMENT, LLC

By: _____
Name:
Title:

EMPLOYEE

By: _____
Name: