IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| *In re:* | : | **Chapter 11** |
| | : | |
| **SPECTRUM ALLIANCE, LP,** | : | |
| | : | |
| Debtor. | : | |
| | : | **Bankruptcy No. 17-14250** |

**MOTION OF THE DEBTOR AND DEBTOR-IN-POSSESSION FOR
AN ORDER (I) AUTHORIZING THE DEBTOR TO OBTAIN SECURED POST-
PETITION FINANCING PURSUANT TO 11 U.S.C. §364(c), (II) SCHEDULING AN
EXPEDITED HEARING, REDUCED NOTICE PERIOD AND LIMITED NOTICE
PURSUANT TO FEDERAL RULE OF BANKRUPTCY PROCEDURE 9006(C)(1)
AND E.D. PA. L.B.R. 5070(F), AND PROVIDING FOR (III) RELATED RELIEF**

Spectrum Alliance, LP (the "Debtor" or the "Borrower"), by and through undersigned counsel, Ciardi Ciardi & Astin, hereby moves this Court for an order (I) pursuant to 11 U.S.C. § 364(c), authorizing the Debtor to obtain secured post-petition financing consisting of a loan from QuickLiquidity XXIV, LLC ("Lender") to the Debtor under and pursuant to the DIP Agreement (defined *infra*), (II) an Expedited Hearing, Reduced Notice Period and Limited Notice Pursuant to Federal Rule of Bankruptcy Procedure ("Rule") 9006(c)(1) and E.D. Pa. L.B.R. 5070(f), and for (III) related Relief (the "Motion"); and in support thereof respectfully represents as follows:

## BACKGROUND

1.      On June 20, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Title 11 of the United States Code, 11 U.S.C. §§101, et seq. (as amended, the "Bankruptcy Code") in this Court. The Debtor remains in possession of its property and continues to operate its business as a debtor-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

1

2. On July 7, 2017, the Office of the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") in this case.

3. This Court has jurisdiction over this Chapter 11 case and the Motion pursuant to 28 U.S.C. §§157(b) and 1334. Consideration of the Motion constitutes a core proceeding as defined in 28 U.S.C. §157(b)(2).

4. Formed in 2001, the Debtor is a private, open-ended investment fund comprising both stabilized and developmental real estate assets located in New Jersey, Pennsylvania, and Delaware. The Debtor focuses on two property types: Class A suburban office and suburban retail. Spectrum is a Pennsylvania limited partnership, with each of its properties separately owned by a limited liability company or limited partnership in accordance with institutional financing requirements. Ownership interests in the Debtor are structured as limited partnership interests, denominated in "Units".

5. The Debtor owns interests in all or a portion of various subsidiary entities that own title to real estate. The income-producing entities owned by Debtor are set forth below:

(a) **Cedar Hill Shopping Center**: VSC-EE, LLC owns Units 2A, 2B, 3 and 4 and VSC-5, LLC owns Unit 5 in the Cedar Hill Shopping Center Condominium in Voorhees Township, Camden County, New Jersey. The property is a retail power center comprised of nearly 400,000 rentable square feet (approximately 360,000 constructed, with additional development pending). Shem Creek Cedar Hill, LLC has a first lien on Units 2A, 2B, 3 and 4. MAREIF has a first lien on Unit 5.

(b) **Hillcrest Shopping Center**: HC Spectrum Partners, LP owns a 78.38% tenant-in-common interest in this approximately 133,797 square foot community shopping center

located in the Borough of Lansdale, Montgomery County, Pennsylvania. Malvern Federal Savings Bank has a first lien on the property.

(c) **Towamencin Corporate Center**: CB Spectrum Partners, LP ("CB") owns this approximately 77,000 square foot, three-story office building and a 550 car parking garage located at 1690 Sumneytown Pike, Kulpsville, Montgomery County, Pennsylvania, also known as Unit 4 in the Kulpsville Business Campus, a Condominium. The Debtor owns a 51.1% limited partnership interest in CB and 1690 Partners, LLC owns a 48.9% limited partnership interest in CB.

(d) **Mount Laurel Corporate Center**: ML Spectrum Partners DE, LLC owns a 33.39% tenant-in-common interest in an approximately 87,011 square foot office building located at the intersection of Route 73 and Howard Boulevard in Mount Laurel, Burlington County, New Jersey. Wells Fargo Commercial Mortgage Servicing services the first lien CMBS loan on this property.

(e) **Gwynedd Corporate Center**: GCC Building Associates, LP owns a 75.03% tenant-in-common interest in Buildings 1 and 2, and 100% of Building 3, in this three-building, approximately 122,803 square foot office complex located on PA Route 63 (Welsh Road) in North Wales, Montgomery County, Pennsylvania. The property is formed as a condominium known as the Gwynedd Corporate Center, a Condominium. Shem Creek GCC, LLC has a first lien on each of the condominium units comprising the property.

The Debtor also owns all or a portion of four (4) subsidiary entities that own title to undeveloped land assets as follows:

(a) **Lehighton**. Spectrum 209 Partners, LP owns approximately 9.3 acres of undeveloped land in Carbon County, Pennsylvania. Harleysville National Bank has a first mortgage on this property.

(b) **Hawthorne Court**. Hawthorne Court Associates, LP owns two condominium units on this approximately 13-acre parcel of undeveloped land in North Wales, Montgomery County, Pennsylvania. Wohlsen Construction holds a first lien on the condominium units and appurtenances owned by the Debtor.

(c) **Cedar Lake**. MVI Spectrum Partners, LLC owns approximately 10 acres of undeveloped land in Voorhees, Camden County, New Jersey. MAREIF holds a first mortgage on this land. Luciano DiVentura has a preferred equity interest in MVI Spectrum Partners, LLC.

(d) **Pond Building**. PB Spectrum Partners, LP owns an approximately 2.23 acre tract (also known as Unit 6 of the Kulpsville Business Campus, a Condominium) in Kulpsville, Montgomery County, Pennsylvania. The International Union of Operating Engineers of Eastern Pennsylvania and Delaware Pension Fund holds a $10,000,000 preferred equity position in PB Spectrum Partners, LP and has executed on a pledge of, and now owns, the Debtor's former Limited Partnership interest in PB Spectrum Partners, LP.

6. The Debtor and Lender reached a term sheet whereby Lender shall provide post-petition financing to Debtor in the form of a $1,150,000.00 loan (the "Loan") with a flat fee of $150,000 due to the Lender at closing (the "Term Sheet"), secured by first priority, perfected security interests in all of the limited partnership interests of the Debtor (the "Collateral"). The Debtor was authorized by the Bankruptcy Court to advance a $10,000 due diligence fee and a $9,500 legal fee to the Lender, upon an oral motion, made on the record on August 2, 2017. The Term Sheet will be used to generate the binding loan documents (the

"DIP Agreement").

7. The Debtor requires the post-petition financing to continue and manage its operations in anticipation of confirmation of a Plan and exit financing.

8. Specifically, the Debtor does not have sufficient available sources of working capital or other financing to continue to manage its investments and subsidiaries for the benefit of its creditors.

9. The Lender has indicated its willingness to extend post-petition financing to the Debtor, but only in accordance with and under the terms set forth in the Term Sheet attached hereto as **EXHIBIT A**, the salient terms of which are summarized as follows:

| | |
|---|---|
| **Loan Amount:** | The proposed loan amount shall be $1,150,000.00. |
| **Interest Rate:** | There shall be a flat fee due at closing of $150,000.00 which shall be added to the debt. |
| **Term:** | The term of the loan shall be for 6 months. |
| **Extension:** | There shall be a maximum of 1- 6 month extension. An extension fee of $150,000.00 shall be added to the debt. All extensions are at the sole option of the Lender. |
| **Maturity Fee:** | Lender shall be entitled to a Maturity Fee of ten (10%) percent of the Loan amount in the event the Loan remains unpaid at maturity. |
| **Due Diligence Fee:** | $10,000.00 nonrefundable Due Diligence Fee shall be due upon the execution of this Term Sheet. |
| **Legal Fee:** | The estimated legal fees for this transaction shall be $9,500 which shall be sent directly to counsel engaged by the Lender. |
| **Default Rate:** | Debtor acknowledges that there is no Interest Rate due upon this Loan, and is paying a flat-fee at Closing. However, in the event that the Loan remains unpaid at maturity, Lender shall be entitled to a default interest rate of twenty-four (24%) percent on the outstanding Loan amount due to Lender. |
| **Break-Up Fee:** | Borrower agrees that Lender is taking on certain risk for this proposed Loan, and is reserving capital in accordance with such risk to make this Loan. As such, upon and after Lender's issuance of this Term Sheet and acceptance of the terms hereof by Borrower, Borrower shall be obligated to pay a Break-Up Fee of 3% of the Loan amount to the Lender in the event |

5

        that Borrower fails to consummate the Loan with the Lender for any reason. The Break-Up Fee shall be payable on the earlier of (1) the funding of any alternative financing; or (2) 30 days after approval of the alternative financing by the Bankruptcy Court; or(3) within 30 days of notice of non-approval from Lender. The Break-Up Fee is in addition to any other fee or expense reimbursement herein. Borrower shall take all necessary action in the Bankruptcy Court to pay the Break-Up Fee, when it accrues, including, without limitation, stipulating that such fee is an allowed Chapter 11 administrative expense payable immediately, budgeting for the Break-Up Fee in any cash collateral or financing budget, and filing an application to pay the Break-Up Fee, if necessary. Borrower represents that any such Break-Up Fee shall be earned upon the execution of this Term Sheet. If the Lender is unable to fund this transaction, or the Borrower is unable to obtain Bankruptcy Court approval for this transaction, or if the Lender unilaterally terminates this Agreement, the Break-Up Fee shall not shall not be due from Borrower.

**Collateral:** Subject to Bankruptcy Court approval, a first priority priming perfected security interest in the Debtor's ownership interests, stock, and membership interests in the following entities: (1) VSC-EE, LLC; (2) VSC-5, LLC; (3) HC Spectrum Partners, LP; (4) CB Spectrum Partners, LP; (5) ML Spectrum Partners, LLC[1]; and (6) GCC Building Associates, LP and all assets fixed (subject to disclosed first mortgages, and intellectual assets of the Debtor, and well as all accounts receivable, inventory, furnishings, fixtures and business assets (collectively, the "Collateral").

**Guarantors:** (1) Robert Wrigley and (2) A pledge of the interests of all non-debtor general partners of the Collateral.

    10.    The Debtor intends to repay any borrowing solely from the first to occur of a closing of a sale of real estate or exit financing.

    11.    The terms of the DIP Agreement are fair and reasonable in light of the Debtor's credit and as compared to the terms offered by other lenders.

    12.    Prior to filing the Motion, the Debtor provided a copy of the Term Sheet to the Official Committee of Unsecured Creditors. The Debtor executed confidentiality agreements with three (3) other potential lenders and provided the potential lenders with access to a virtual

---

[1] Note: The Debtor does not own a direct interest in ML Spectrum Partners DE, LLC. ML Spectrum Partners DE, LLC is wholly-owned by ML Spectrum Partners, LLC, in which the Debtor owns a membership interest.

6

data room. The Debtor has, to date, received one other proposal but the terms were less favorable than those contained in the Term Sheet.

13. Since January 2017, the Debtor has maintained, with the assistance of Griffin Financial Group, a virtual data room containing historical and forward-looking financial information related to the Debtor and its SPE(s).

14. Over two dozen parties performed due diligence related to lending, sale, or restructuring efforts since January 2017. Other than two offers to purchase assets, the proposal from the Lender and the proposal referenced in Paragraph 12, herein, were the only proposals received by the Debtor.

15. The Debtor will supplement the Motion with a proposed Cash Flow/Sources & Uses, **supplemental EXHIBIT B**, and the proposed loan documents, **supplemental EXHIBIT C**, prior to the hearing on the Motion. Each supplemental exhibit will be electronically filed with the Court and will be electronically delivered only to creditors and parties who have requested the same or receive electronic notices.

16. The DIP Agreement allows the Debtor to continue to operate its business and fulfill its obligations, while infusing working capital.

17. The Debtor is unable to obtain credit on an unsecured basis or on the basis of a general administrative claim from any other party or entity.

18. No additional financing statements are required to be filed to perfect the post-petition superpriority administrative claim, liens and security interests granted to Lender under this Motion, the proposed order and the DIP Agreement. However, should Lender elect to file or record financing statements, information statements or other documents, the Debtor requests the Court's permission to do so and also request modification of the automatic stay to allow for the

recording of the same.

19. The granting of the super-priority administrative claims, security interests, and liens to Lender will enable Lender to provide post-petition financing to the Debtor through the DIP Agreement which will permit the Debtor to continue operations, proceed with reorganization efforts, and infuse working capital into its operations.

20. In accordance with Section 364(c), the Debtor represents it is unable to obtain credit for operations on an (a) unsecured basis; (b) on the basis of a general administrative claim; or (c) on any basis more favorable to the Debtor than proposed in the Motion.

21. The Debtor believes that the request to obtain post-petition credit secured by a super-priority lien is proper, reasonable and necessary to continue the Debtor's operations.

22. Approval of the Debtor's request to obtain post-petition credit from Lender secured by the requested liens against the Collateral is in the best interest of the Debtor and the creditors of the Debtor's collective estate.

23. The terms and provisions of the DIP Agreement described in the Motion, including the proposed order, are fair and reasonable and were negotiated by the parties in good faith and at arms' length. Consequently, the Debtor requests that this Court find that any loans made by Lender, pursuant to the DIP Agreement, are made in good faith for the purposes of §364(e) of the Bankruptcy Code.

24. In addition to providing the funds necessary to meet the Debtor's immediate cash needs, the Loan is a bridge to the contemplated sale of real estate set to close within the initial Loan Term (the "Aldi Sale"). Should the Loan be outstanding at the time of the Aldi Sale and a satisfactory release price obtained form the first priority lienholder on the property that may be sold, the proceeds of the Aldi Sale will be used to pay off the Loan in its entirety.

25.     The Debtor requests entry of the order approving the financing and for the entry of an Order scheduling a final hearing.

26.     Counsel for the Debtor has represented the Lender in other unrelated transactions and has represented affiliates of the Lender or its principals in other, unrelated matters. Certain of these unrelated matters are current representations. Counsel for the Debtor, General Counsel to Debtor's management company, and Counsel for the Official Committee of Unsecured Creditors will each participate in the negotiation and finalization of the DIP Agreement.

27.     Creditors may contact proposed counsel for the Official Committee of Unsecured Creditors with questions or concerns regarding the Motion, Order or DIP Agreement as follows:

Rudolph J. Di Massa, Jr., Esquire
Chad E. Odhner, Esquire
Duane Morris LLP
30 S. 17th Street
Philadelphia, PA 19103
Telephone: 215-979-1000
Facsimile: 215-979-1020
Email: DiMassa@duanemorris.com
Email: CEOdhner@duanemorris.com

28.     The Debtor has disclosed all of the terms with Lender and the Debtor. The Debtor, its general partner, officers or employees, as well as Debtor's counsel and other professionals do not have any side agreements, commission agreements, employment agreements or arrangements, oral or written, with the Lender regarding the Term Sheet and the loan contemplated thereunder.

## REQUEST FOR EXPEDITED HEARING

29.     Rule 4001(c) of the Bankruptcy Rules provides that a final hearing on a motion to obtain credit pursuant to Section 364 may not be commenced earlier than 14 days after the

service of such motion. See FED. R. BANK. P. 4001(c). Upon request, however, the court is empowered to conduct a preliminary expedited hearing on the motion and authorize the obtaining of credit to the extent necessary to avoid immediate and irreparable harm to a debtor's estate. See FED. R. BANKR. P. 4001(c)(2).

30. Pursuant to E.D. Pa. L.B.R. 5070(f), the Debtor requests that this Court schedule an expedited hearing as soon as possible as the Debtor's immediate cash needs and obligations are coming due in the next thirty (30) days.

31. The Debtor therefore requests an order scheduling an expedited hearing, limiting notice and reducing the notice period in connection with the Motion. Upon filing the Motion, counsel for the Debtor has contacted the Office of the United States Trustee, counsel for the Official Committee of Unsecured Creditors, and counsel for the Lender to advise them of the Debtor's request for expedited consideration and, where appropriate, to obtain consent to the same.

WHEREFORE, the Debtor requests that this Court enter an order in the form attached hereto and for such other and further relief as this Court deems just.

Respectfully submitted,

CIARDI CIARDI & ASTIN

Dated: 8/2/17

By: /s/ Albert A. Ciardi, III
Albert A. Ciardi, III, Esquire
Jennifer C. McEntee, Esquire
One Commerce Square
2005 Market Street, Suite 3500
Philadelphia, PA 19103
(T) 215-575-3550
(F) 215-575-3551

Attorneys for the Debtor and the
Debtor-in-Possession